**Trzaska v. Trzaska**

C.P. of Lancaster County, No. 2013-01492; 1832 MDA 2013

*Kathleen E. Holmes*, for plaintiff/appellee.
*Patrick J. Kurtas*, for defendant/appellant.

GORBEY, *J.*, December 5, 2013—

## Procedural history

This matter began on May 30, 2013 when Kelly L. Trzaska (wife) filed a complaint against Michael E. Trzaska (husband) for support for herself and three children, Luke, 8, Xavier, 7, and Kazimiera, 2. A support conference was held on June 24, 2013 and the resulting order recommended support in the amount of $1,801.85 per month, effective May 30, 2013. Husband filed a demand

for hearing before the court on July 16, 2013. After the hearing, on September 11, 2013, the court entered a two tier order, covering the summer of 2013 when wife was unemployed and then the period starting on August 26, 2013 when wife had wages from employment. On October 10, 2013, husband appealed the September 11, 2013 order to the Superior Court. It is pursuant to this appeal that this opinion is being prepared.

Factual history

The parties were married on May 17, 2003, and separated on May 29, 2013. A divorce was filed on April 12, 2013.

Wife is 35 years of age. She has custody of the parties' three children. Two are in school and one is in pre-school one day a week. Wife received a BA in psychology with a concentration on school psychology in 2001 and an MS in counseling in 2010. At the time of her marriage to husband she was working as a third grade teacher. At that time, she made $37,000 per year. Both parties agreed for her to be a stay-at-home-mother. Since Luke's birth, she held only part-time jobs, such as an at-home business for sale of educational toys and babysitting. She currently works for the Chester County intermediate unit as a therapeutic staff support member, which means that she reads and follows plans for clinically diagnosed child clients. She has only one client at the Providence Elementary School with whom she meets Monday through Friday, from noon to 3 P.M. She makes $14.75 per hour. Another client has not yet been offered to her.

Wife is also an aide at the Children's Outreach Program of the Brethren Church. She assists children in Bible class, tutors, serves breakfast, plays games, ushers them onto the bus, etc. Her work hours are from 6:30 a.m. to 9:00

a.m. every Wednesday, for which she is paid $8.60 per hour. She pays $20 for child care for the morning. This job is not available during the summer months. Because of her work, she has daycare costs for the youngest child of $106.00 a week, in addition to a security deposit and registration fee of $240. During the summer, the boys go to Bible Camp at a cost of $40 per day. Because she gets a 50% tuition reduction due to her employment, she pays $80 per month per child.

She also does five to ten hours a week of volunteer work at the Center for Community Peacemaking. In addition to the above, she checks in with Careerlink every day trying to find a full-time position.

Because of her lack of employment during her marriage, her teaching certification lapsed. As a result she needed to be re-certified as a teacher, which was accomplished in August of 2013. If a full-time teaching job opened up, she would be qualified to take it, and will be applying for such a job for the 2014-2015 school year. If she gets a job, the baby would have to be in full-time day care at $177 per week and she would need an after-school babysitter for the boys.

Husband did not testify about his employment situation, since the parties stipulated to his income as presented at the conference. He lives in a house with his father, to whom he pays no rent. He pays utilities and $600 per month on credit card bills. The house's energy source is propane, for which he pays $126.00 twice a year.

Husband presented an expert witness, Terry Leslie, who has been a vocational rehabilitation counselor since 1987. His opinion was that wife was employable immediately in a full-time job, many of which, he asserted, were now available in the community. He opined that averaging out

year round part-time jobs as well as full-time education connected support jobs which she was qualified for could provide $28,000 a year. If she acquired a job as a teacher, she could start at $44,000 a year. He did not take into account that one of her children is pre-school age or factor in a day-care offset. He did not interview wife at all for the preparation of his report, but relied on husband's descriptions of her employment and abilities.

The court did not give wife an earning capacity as proposed by Mr. Leslie, but utilized her current wages for the purpose of calculating support.

## ISSUES

1. Whether the court erred in failing to disclose the basis upon which it arrived at its support decision.

2. Whether the court erred by failing to consider the expert testimony, by not disclosing why it did not consider the expert testimony, and/or by substituting its findings for that of the expert witness.

3. Whether the court erred in its determination of defendant's day care expense obligation.

## ANALYSIS

Issue 1 — The court is charged with calculating a support obligation based on the relative incomes of the parties according to the guidelines. As set out in the Pennsylvania Rules of Civil Procedure 1910.16-1(b):

Amount of Support. The amount of support...to be awarded...shall be determined in accordance with the support guidelines which consist of the guidelines expressed as the child support schedule set forth in rule 1910.16-3, the formula set forth in rule 1910.16-4 and the operation of the guidelines as set forth in these

rules.

This is the instruction which guides the court in its calculation of its support, once it has heard testimony and determines the relative incomes of the parties. The court may deviate from the guidelines only when there is an extraordinary circumstance contained in a case and then must set out on the record its reasons for the deviation. There is no specific instruction that the court must lay out in its order in detail when the guidelines are being used. In this case, husband's income was agreed upon by both parties as being the figure presented by husband at the support conference. Its absence from the order does not affect husband in the slightest. The figure for wife's income is contained in the order for both tiers. Husband can thus calculate the court's method by referring to the guidelines which are set out in Rule 1910.16-4. The court did not err in this aspect of the case.

Issue 2 — A trial court has discretion to accept or reject a witness' testimony, including that of an expert witness, and is free to believe all, part, or none of the evidence presented. *In re Bosley*, 26 A.3d 1104 (Pa. Super 2011). Certainly, it is clear that the trial court is under no obligation to delegate its decision-making authority to an expert witness. However, while a trial court is not required to accept the conclusions of an expert witness, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. "To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court [is] not obligated to accept the conclusions of the experts." *M.A.T. v. G.S.T.*,

989 A.2d 11 (Pa. Super 2010)

In this case, husband presented the testimony of a vocational expert, Terry Leslie, who opined that wife should be able to find a full-time job immediately. The court did not find Leslie's testimony to be in the least persuasive. He never interviewed wife, depending instead on information from husband as to her education and abilities. He did not consider the fact that she had a pre-school child at home and two young school age children. He did not consider that she would have to pay for day care for all three children. He did not specify how the "immediate" jobs would be suitable for her. On the other hand, wife's testimony satisfied the court that she was doing the best she could to be employed productively. She had not worked during the marriage, with husband's agreement, and therefore needed to be re-certified. That was unfortunately delayed by bureaucratic processing until it was too late for her to take a teaching position for the 2013-14 school year. She will be applying for a full-time position for next year. She has a support position with the Chester County School District. Her salary depends upon the number of clients she services; she has been offered only one, with whom she currently works on a daily basis. She is working at a Brethren Church facility every Wednesday morning during the school year. She visits Careerlink daily. She does volunteer work five to ten hours a week, but the court does not disapprove of this undertaking. This arrangement had been agreed to by husband, and also provides her with work experience and contacts possibly relevant to future employment. After almost ten years of unemployment, and having lost her teaching certification, the court cannot fault wife for not finding one of the jobs which Leslie believes can be found. The court therefore finds no error in its having used its own

opinion and discretion and not accepting that presented by husband's expert witness.

Issue 3 — Pennsylvania Rule of Civil procedure 1910.16-6(a) provides, in relevant part:

Child care expenses. Reasonable child care expenses paid by either parent, if necessary to maintain employment or appropriate education in pursuit of income, shall be allocated between the parties in proportion to their net incomes and added to his and her basic support obligation. . . .

Wife testified to her child care needs. Her daycare costs for her daughter comes to $106.00 per week during the school year. This is a two tiered order. Between June 5, 2013 and August 26, 2013 wife is unemployed and has no child care costs, so husband has no child care obligation contained in his support obligation. During the school year, she has, cumulatively, child care costs of $3,816 and that amount has been allocated between the parties as required, with his portion added into husband's support obligation. The court sees no error in this procedure, since there is no requirement that the court set out its calculations in any detail.

## CONCLUSION

Based on the above, the court affirms all aspects of its order of October 28, 2013 pertaining to the spousal and child support obligation of Michael E. Trzaska.